204 So.2d 506

**Aubrey Ray KNOWLES**

v.

**STATE.**

**1 Div. 252.**

Court of Appeals of Alabama.

Oct. 24, 1967.

Rehearing Denied Nov. 21, 1967.

———

· Wilson Hayes, Bay Minette, for appellant.

MacDonald Gallion, Atty. Gen., and Marlin Mooneyham, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

The appellant was convicted at the Spring Term of the Circuit Court of Baldwin County, Alabama for the offense of cattle theft and sentenced to a term of ten years in the State Penitentiary. From said judgment, this appeal is made.

Mr. Lewis Cotton testified for the State that he lived six miles southwest of Bay Minette, Alabama in Baldwin County; that he operated a farm there on which he raised cattle; that on or about January 7, 1967, one of his cattle "was killed"; that this cow was found "in one of the fields or pasture known as the Beebe Farm", which Cotton leased, "about twenty steps from the fence and gate going into the field"; and that the cow weighed about "700 or 750 pounds"

and was valued at approximately $150.00. The witness testified as follows:

"Q. Did you examine the immediate area?

"A. Yes sir. I saw the cow Sunday morning and went back with my boys after church to remove the cow; she was dead and swollen up and I saw that the cow had been shot twice in the head and drug about 20 steps and a four wheel vehicle had backed up close to the location and it looked like an attempt to load it, and that is when I called for somebody to investigate it.

"Q. Had she been drug towards the gate?

"A. Yes sir."

Mr. Cotton also stated that he was the owner of this cow.

Michael Davidson testified on behalf of the State that he knew appellant; that he had been charged with cattle theft "in this case"; that he had pled guilty before this same court; but had not yet been sentenced. The witness stated that he was with appellant on the night of January 7, 1967, and that Jerry Davidson, the witness' first cousin, accompanied him. The witness further testified as follows:

"Q. What did you and he [appellant] do that night?

"A. We shot a cow.

"Q. Where?

"A. White House Forks.

"Q. Do you know whose cow it was?

"A. Yes sir.

"Q. Whose?

"A. Lewis Cotton's.

*    *    *    *    *    *

"Q. How big, approximately, was the cow you shot?

"A. A big cow.

"Q. Do you have any opinion as to how much she might have weighed?

"A. About 700 pounds.

"Q. Did you try to load her in the trunk of the car?

"A. Yes sir.

"Q. Who tried to load her?

"A. All of us.

"Q. Name all of you?

"A. Me, Jerry, Horace and the Defendant there."

The witness further stated that because of the weight of the cow they were unable to load her into the car after dragging her to the parked car; that he "had an agreement with" appellant as to what was to be done with the cow; that appellant's uncle was going to buy the cow for "25¢ a pound" and "$5.00 for skinning him"; and that appellant had pointed out which cow to shoot and "Horace shot him first" and that he (the witness) actually killed the cow.

On cross-examination, the witness stated that he was eighteen years old; that he had sold muskrats to appellant's uncle about three weeks before the shooting of the cow; that said uncle had stated that he would buy "any kind of game I could get"; that said uncle had gotten mad at him because he had wanted squirrels, not muskrats; that Horace Clark was the third boy who had been with appellant, and Clark had also pled guilty; and that he (the witness) was "hoping" to get probation but had not talked with Mr. Hendrix, the Circuit Solicitor, about the case.

Horace Clark testified for the State that he had also been charged with cattle theft "in this case" and had pled guilty; that he had met appellant only once, the night of the shooting of the cow; that the four boys arrived at Mr. Cotton's place "about 9:30" and "we killed the cow"; that the witness shot first and "Mike [Davidson] shot her", killing the cow; that they moved the cow but were unable to load her into the car because of her weight; and that appellant selected the cow which would be shot.

On cross-examination, the witness stated that he was nineteen years of age; that the car used was a 1956 Mercury; that he drove the appellant to Mobile after killing the cow and then went home; that he (the witness) had had about "a cup of peach brandy" that night and that they were all drinking brandy except the appellant; and that he (the witness) had not discussed the case with the solicitor but had discussed it with the sheriff and the probation officer.

Mr. B. M. Rikard testified for the State that he is an investigator for the State in the livestock division and that he investigated the death of Mr. Cotton's cow and had a conversation with appellant in jail with Mr. Garner, Chief Deputy Sheriff of Baldwin County, present at one time and the solicitor present at the other. He stated that "Mr. Garner and I both told him and you told him that he had a right to counsel before he answered any questions whatever"; that he advised appellant "that he didn't have to answer any questions at all if he didn't want to"; that he told appellant he had a right to an attorney and that if he could not employ one, the State would employ one for him; and that anything appellant said could be used against him in a court of law. The witness further testified that appellant made a statement freely and voluntarily without offer or hope of reward or any threats or inducements; and that appellant was not intimidated and no force was used against him. The witness testified that the statement was made at about "4:00 or 5:00 o'clock in the afternoon" of the same day appellant was brought to jail from Mobile, which was the same day of his arrest. He continued:

"Q. What did he tell you at that time?

"A. He told us that he was sorry that he had lied to us to start with about it—when he was first picked up, and that he was with the other three boys—

"MR. HAYES:—I would like to object —This witness is now testifying that there was other—or another conversation

previously made and we have no evidence of that.

"THE COURT: Overrule the objection.

"MR. HAYES: Except. They had already interrogated him one time—

"THE COURT: You have it in the record and I have given you an exception. Go ahead.

"A. He was arrested by Mr. Thompson—

"THE COURT: Go ahead and tell what he told you?

"A. He told us he was in the presence of the other three boys when the cow was killed and that he tried to help load it in the back of the car and that he did come over to go hunting, but they decided to kill the cow instead and these others— Mike Davison, Jerry Davison had come over to Mobile and picked his uncle up at the Acme Cafe and his uncle came around to his house with them and got him and he came back with Jerry and Mike and they went to Horace Clark's house and got him and went out in the pasture there and killed the cow and that Horace Clark shot the cow first and Mike shot it the second time."

■ Appellant's counsel then moved to exclude the statement of appellant on the grounds that "it shows that this was not the first time he was interrogated and the first time has not been qualified and the proper predicate" had not been laid. Appellant reserved an exception when this motion was denied. However, since the record reflects no other confession and/or statement by appellant, we feel that appellant was not prejudiced. Thus, there was no error in the overruling of appellant's motion.

Willard Garner, Chief Deputy Sheriff of Baldwin County, testified that during the investigation he had a conversation with appellant in the county jail on "the day he was brought from Mobile" and that Mr. Rikard and the Solicitor were present at the time. He corroborated the testimony of Mr. Rikard as to the explanation to appellant of his constitutional rights, and stated that he (the witness) thought appellant's statement "freely and voluntarily made". The State then rested.

The jury was excluded from the courtroom and appellant's counsel made a motion to exclude the evidence on the grounds "that the State has not made out a case"; that the only evidence connecting appellant to the case "is testimony of an accomplice"; that all else is an alleged confession contended to be inadmissible because it was not shown how long appellant was in custody or whether the statement introduced into evidence was the first conversation or the second; and "because it is not, in fact, a confession". The court then stated the following:

"I don't understand why you don't have the officers—they ought to know what day the man was arrested, and when they interrogated him. I don't understand why they didn't come in and testify that it was on the 8th, 9th, or 10th or whenever it was. I am going to deny the motion for several reasons. In the first place, I don't know—when you have more than one accomplice whether you would say that is uncorroborated—the law says if you have the uncorroborated testimony of an accomplice—you have three accomplices, and two testified and this Mr. Rikard testified that the defendant said he thought they were going deer hunting, but agreed to go get a cow and he participated in trying to load it and dragging it up there, and that appears that is all of the corroboration we need and I deny the motion."

■■ The statements by the court that other accomplices corroborated the "testimony of an accomplice" were erroneous. The case of Evans v. State, 42 Ala.App. 587, 172 So.2d 796, states in part as follows:

· "Another accomplice's testimony may be cumulative but cannot be corroborative. Morris v. State, 17 Ala.App. 126, 82 So. 574."

See also Morris v. State, 17 Ala.App. 126, 82 So. 574. However, the above statement by the court did not injure the appellant in the eyes of the jury as it was made out of the presence of the jury. For this reason, the statement by the court must be seen as error without injury, Sup.Ct. Rule 45, Rev.1966.

■ Appellant's claim of error No. 4 deals with his motion for a mistrial, which was denied by the court after the following occurred:

"REPORTER'S NOTE: While MR. HENDRIX, the District Attorney, was stating the case to the Jury at the beginning of the trial, he made the following statement:

'This Defendant, along with three other boys, who have already pled guilty, were indicted at the Spring Session of the Grand Jury—

"MR. HAYES: We move for a mistrial right now. His comment: 'ALL OF WHOM HAVE PLED GUILTY' is prejudicial to the Defendant—and has already done so—

' "THE COURT: Deny the motion.

"MR. HAYES: We except."

This statement by the solicitor, in our opinion, prejudiced appellant in the eyes of the jury.

The case of Rowland v. State, 31 Ala. App. 605, 20 So.2d 881, states in part that " * * * there was no statement by the Solicitor to the effect that the State expected to offer evidence tending to show * * * *" that these "other boys" had pled guilty.

The case of Higdon v. State, 25 Ala.App. 209, 143 So. 213, states in part as follows:

"The practice of making opening statements to the jury as to what counsel expect to prove on the trial is unnecessary and useless, but, when allowed by the court, counsel should confine himself to statements based upon facts admissible in evidence, and the court will not allow counsel to take such opportunity to make statements not based on legal testimony and prejudicial to defendant."

See also Patterson v. State, 34 Ala.App. 359, 39 So.2d 709.

In the case of Lane v. State, 40 Ala.App. 174, 109 So.2d 758, a case similar to the one before us, this court stated:

"The Supreme Court of North Carolina in a case of robbery, State v. Kerley, 246 N.C. 157, 97 S.E.2d 876, 878, in discussing the incompetency of the evidence of a conviction of one co-indictee against another (after citing many decisions apt here), said:

'While Powell and Kerley were indicted jointly, the crime was several in nature. The guilt of one was not dependent upon the guilt of the other. If one were convicted or pleaded guilty, this would not be evidence of the guilt of the other; nor would the acquittal of one be evidence of the innocence of the other. * * *'

"At our last term, Judge Price, citing authorities in addition to the foregoing, applied the same rule to reverse a conviction where the State brought out, over objection, an accomplice's plea of guilt to the same offense. Evans v. State, 39 Ala.App. 498, 105 So.2d 831.

"This view seems fundamental and (with but one minor exception) is stated as the major premise of the annotation at 48 A.L.R.2d 1016, for we find in § 1, the first sentence:

'Where two or more persons are jointly indicted for the same criminal offense which is in its nature several, or are separately indicted for such of-

fense or for separate offenses growing out of the same circumstances, and are tried separately, the fact that one defendant has pleaded guilty or has been convicted is, as a general rule, inadmissible as against the other, since competent and satisfactory evidence against one person charged with an offense is not necessarily so against another person charged with the same offense, and since each person charged with the commission of an offense must be tried upon evidence legally tending to show his guilt or innocence. * * *'

"We adhere to Evans v. State, supra.

"Reversed and remanded."

In the case at bar the solicitor failed to state that he "intended to prove", or that the evidence would tend to show that others had pled guilty. Because of the omission of this necessary preface to his remarks, we feel that appellant was so prejudiced that it was error to allow the statement by the solicitor to be considered by the jury without any clarifying instruction from the court.

The judgment in this cause is, therefore due to be and the same is hereby

Reversed and remanded.

On Application for Rehearing

JOHNSON, Judge.

The contention that the remarks of the district attorney in his opening statement to the jury, to-wit, "This defendant, along with three other boys, who have already pled guilty, were indicted at the Spring Session of the Grand Jury * * *" were not prejudicial to appellant is renewed at this time; however, we cannot agree with this contention.

The case of Thomas v. State, Fla.App., 202 So.2d 883, states in part as follows:

"As a general rule, it is improper for a prosecuting attorney to disclose during trial that another defendant had been con-

victed or has pleaded guilty. This is because competent and satisfactory evidence against one person charged with an offense is not necessarily so against another person charged with the same offense. Each person charged with the commission of an offense must be tried upon evidence legally tending to show his guilt or innocence. See State v. Gargano, 99 Conn. 103, 121 A. 657 (1923); Gray v. State, 221 Md. 286, 157 A.2d 261 (1960); Cameron v. State, 153 Tex.Cr. R. 29, 217 S.W.2d 23; Annotation, 48 A.L.R.2d 1017."

See also the Alabama case, Lane v. State, supra.

We feel that the above remarks made by the district attorney could possibly have prejudiced the appellant and the application for rehearing is overruled.

Application overruled.