549 A.2d 380

**STATE of Maryland**

v.

**Ethel R. JOYNES.**

**No. 86, Sept. Term, 1987.**

Court of Appeals of Maryland.

Nov. 2, 1988.

114

John S. Bainbridge, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellant.

Victoria S. Keating, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellee.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired) Specially Assigned.

BLACKWELL, Judge.

This case involves physical altercations among neighbors. The sole issue presented is whether the trial judge committed reversible error by refusing to admit evidence of a witness's prior criminal conviction for battery,[1] where the witness was earlier convicted in connection with the same incident. Here, the defendant sought to admit the witness's battery conviction in the subsequent trial on the grounds it constituted material evidence as to self-defense. We granted certiorari to consider the important issue raised.

Pursuant to Maryland Rule 8–501(g), the parties have stipulated to the following facts. Respondent, Ethel R. Joynes (Joynes), was charged with battery and carrying a weapon openly with intent to injure. The charges arose out of an altercation that occurred on July 7, 1985, between Joynes, her husband and her son, and one of their neighbors, Oliver Handy. The fracas resulted in (1) a broken arm for Joynes, the result of a wound inflicted by Handy, (2) stab wounds to Handy inflicted by Joynes, and (3) a cut

---

1. Defendant's counsel referred to Handy's conviction as "assault and battery" during the evidentiary arguments. However, in *State v. Duckett*, 306 Md. 503, 510, 510 A.2d 253, 256–57 (1986), we explained that the term "assault and battery" is a misnomer since there is no single crime in Maryland under that description. When the term is used, it either describes two crimes, or it refers to the crime of battery, and the word "assault" is superfluous. *See Woods v. State*, 14 Md.App. 627, 632, 288 A.2d 215, 218 (1972); L. Hochheimer, *The Law of Crimes and Criminal Procedure* § 253 (2d ed. 1904). We shall hereinafter refer to Handy's prior conviction as a "battery."

on Handy's forehead inflicted by Joynes' husband. At Joynes' trial, the evidence consisted primarily of the testimony of two combatants, Joynes and Handy, along with that of their respective family members and various neighbors.

The testimony revealed a material inconsistency concerning who was the initial aggressor. According to Oliver Handy, his wife, Perrine Handy, and the latter's son, Wendell Mitchell, the incident ensued as a result of loud music emanating from the Joynes' property, which was cater-cornered to the Handy home. Handy's wife had retreated to the bedroom, closed the door, and turned the air conditioner on in an effort to avoid the noise. Handy further testified that he approached the Joynes' residence, and "hollered across the fence", asking them to turn the music down. After returning a second time, Handy "hollered across there again, [yelling] 'turn the music down!' " According to Handy, Joynes told him to come into the Joynes' yard and, as he proceeded around the fence to the front of the house, he observed Joynes coming down the driveway with a knife in her hand. Handy then picked up a three-foot long two-by-four because he deemed it necessary "to protect myself." As Handy approached the Joynes' driveway, Joynes advanced "right out in the street and she whacked at me with this knife ... and I hit her with the two-by-four." Subsequently, Handy was attacked by Joynes' husband and son.[2] While lying in the street after falling backwards, Handy was struck twice, in the hip and knee, by Joynes who was wielding a knife.

Contrary to the above factual assertions, Joynes steadfastly maintained that Handy was the aggressor and that she had acted in self-defense.

The combined testimony of Joynes and her husband was that Handy approached the fence adjacent to their property,

---

**2.** *State of Maryland v. Ethel R. Joynes,* no. 86CR0354 and *State of Maryland v. George A. Joynes,* no. 86CR0461 were consolidated for trial. George Joynes was acquitted of all charges.

banging a six-foot two-by-four on the ground and swearing. The verbal altercation intensified as Handy demanded that Joynes confront him in the driveway area. Joynes attested that Handy swung the two-by-four in the direction of her head, and that "he was trying to kill me." Joynes raised her arm to ward off the impact of the blow and suffered a broken arm. Joynes retreated to her husband, who had a fish knife strapped to his side. As Joynes' son, Kevin, yelled and threatened Handy, Handy allegedly initiated another physical attack with the two-by-four. Joynes stated that she then grabbed the fish knife and attacked Handy in an effort to protect her son. At a point after the initial physical altercation, Joynes' husband, George Joynes, also armed himself with a piece of lumber. Mr. Joynes testified that he approached Handy with his own two-by-four, approximately eight-feet long, in an attempt to push Handy out of their property. Shortly after obtaining the knife, Joynes stabbed Handy. Both Joynes' husband and Phillip Cornish, a neighbor called as a defense witness, stated that Joynes had wounded Handy after he had fallen backward, although neither actually observed the stabbing. It is clear that the altercation involved a series of physical attacks with separate participants at different points in time.

As a result of the incident, Oliver Handy was convicted of battery in an earlier criminal trial. Joynes was subsequently found guilty of both battery and carrying a weapon openly with intent to injure after a jury trial was held in the Circuit Court for Wicomico County.

At trial, Joynes' counsel sought to introduce the evidence of Handy's conviction for battery, relating to the same series of events. Counsel expressly stated the purpose supporting admission of the conviction in a proffer:

> The defendant [Joynes] intends to present an exhibit and produce evidence that the complaining witness has already been convicted of assault and battery with regard to this exact altercation and, as the State has already pointed out, one of the ultimate issues in this case is who was the initial aggressor, who was it who initiated the

confrontation, and that the conviction of Mr. Oliver Handy beyond a reasonable doubt that he is guilty of assault and battery is, most relevant and material.... [T]his is being introduced, *not to impeach Mr. Handy, not to do anything but to show that he was the original aggressor at some point in time* (emphasis added).

The trial judge refused to allow the fact of the battery conviction to be introduced as evidence. He stated, "I don't see how it is relevant in this case. It is not being offered for the purpose of impeachment." Joynes' counsel renewed the evidentiary motion for admission of the conviction of Handy at the close of the State's case. Again, the trial judge sustained the objection and further reasoned:

Yet I don't feel that this jury would be bound by a finding of another jury. They have a right to effectively believe that there was no assault and battery by Mr. Handy if they believed that they could return findings of guilt against the defendants in this case. The evidence that Handy had been found guilty of assault and battery, I think it could perhaps confuse the jury as to their obligation in this case.

Upon review of the above evidentiary rulings, the intermediate appellate court vacated the judgment against Joynes and remanded for a new trial. In an unreported opinion, the Court of Special Appeals held that the fact that Handy had earlier been convicted of battery in connection with the same incident was relevant to Joynes' claim that she had acted in self-defense against an aggressor.

In this Court, the State's arguments are: (1) that the trial judge properly exercised his discretion in refusing to admit the prior conviction, (2) that the fact of a witness's battery conviction would be of no value for the trier of fact, and (3) that a jury's prior deliberations would neither prove nor disprove Joynes' guilt. Joynes' primary argument was that Handy's prior conviction was admissible under the provisions of the Maryland Code (1974, 1984 Repl.Vol.), Courts and Judicial Proceedings Article, § 10–904 and § 10–905(a),

and under established evidentiary principles. The trial judge did not commit error. We explain.

## I.

■ In *Leeson v. State*, 293 Md. 425, 433–34, 445 A.2d 21, 25 (1982), we reaffirmed the traditional test of admissibility of evidence in a criminal case as articulated in *Dorsey v. State*, 276 Md. 638, 350 A.2d 665 (1976). The *Dorsey* court outlined the responsibility of a trial judge in determining the relevancy of proposed evidence. There, this Court stated:

> The real test of admissibility of evidence in a criminal case is 'the connection of the fact proved with the offense charged, as evidence which has a natural tendency to establish the fact at issue.' ... [O]ur predecessors stated it to be 'an elementary rule that evidence, to be admissible, must be relevant to the issues *and must tend either to establish or disprove them.*' [Citations omitted].

*Id.* 276 Md. at 643, 350 A.2d at 668–69 (emphasis added). *See, e.g., MacEwen v. State*, 194 Md. 492, 501, 71 A.2d 464, 468 (1950).

There are two important components to relevant evidence: materiality and probative value. Materiality looks to the relation between the propositions for which the evidence is offered and the issues in the case. The second aspect of relevance is probative value, which is the tendency of evidence to establish the proposition that it is offered to prove. *See McCormick on Evidence* § 185, at 541 (E. Cleary 3d ed. 1984). Although the relevancy assessment is not susceptible to precise definition, it has been suggested that "the answer must lie in the judge's own experience, his general knowledge, and his understanding of human conduct and motivation." *See McCormick on Evidence* § 185, at 544 (E. Cleary 3d ed. 1984). Evidence which is thus not probative of the proposition at which it is directed is deemed "irrelevant." *Dorsey, supra,* 276 Md. at 643, 350 A.2d at 669; Wharton's *Criminal Evidence* § 151 (13th ed. 1972).

The trial judge is usually in the best position to evaluate the probative value of the proffered evidence. Where evidence is utterly lacking in probative value, it may be condemned as "remote" or "speculative." *See McCormick on Evidence* § 185, at 542 (E. Cleary 3d ed. 1984).

Although the specific issue raised is a matter of first impression, we are satisfied the trial judge's preclusion of the witness's battery conviction on relevancy grounds was not erroneous. The fact of Handy's battery conviction neither tends to establish nor disprove Joynes' claim of self-defense. It is also irrelevant with regard to any of the material facts at issue. Under the circumstances of this case, the fact that a separate jury found another participant guilty is not probative in the subsequent trial. To admit Handy's conviction as material evidence in Joynes' trial invites pure speculation by the jury as to what the conviction meant. Where distinct battery charges arise out of a progression of physical altercations, the decision of one jury should have no bearing upon the deliberations of another. The witness's battery conviction does not assist the jury in determining who was the aggressor in each phase of the fracas. It is reasonable to conclude that the incident involved at least two separate acts of physical force.

Under these circumstances, the correct approach is to allow the jury to make its factual findings without any reference to the other participant's battery conviction stemming from a series of events. We find no error here.

## II.

Our analysis shifts to the applicability of statutory bases for the admissibility of prior convictions.

 Section 10–904 provides, in full:

§ 10–904. Proof of crime committed by another.

In a civil or criminal case in which a person is charged with commission of a crime or act, evidence is admissible by the defendant to show that another person has been convicted of committing the same crime or act.

We interpreted the predecessor statute of § 10–904 in *Gray v. State*, 221 Md. 286, 157 A.2d 261 (1960).[3] In commenting on the legislative intent, this Court reasoned that the statute was necessary to "avoid the absurdity of convicting two persons" for a crime only one could commit. *Id.* 221 Md. at 290–91, 157 A.2d at 264 (quoting 1 Wigmore, *Evidence* (3d ed.) § 142). The *Gray* holding is limited to convictions of another person for the same crime, assuming further that it is predicated as the deed of one person and not of joint actors. The *Gray* decision also reasoned that the statute could not be construed to mean that a defendant's guilt could be proved by evidence of an accomplice's conviction, because such evidence "is universally held to be inadmissible, and [such a construction] would cause the statute to be so unreasonable as to cast serious doubt upon its validity." *Id.* 221 Md. at 289, 157 A.2d at 263 (citing 2 Wharton, *Criminal Evidence* (12th Ed.), § 439).

Turning to the present case, it is evident that Joynes was not charged with the same crime as the witness, Oliver Handy. Because of the serial nature of the altercation, it is reasonable to conclude that each of the participants may be criminally responsible for his or her individual conduct. It is undisputed that Handy wounded Joynes with a two-by-four, and that Joynes stabbed Handy with a fishing knife. It is evident that there was a lapse of time between the two acts. Both defendants may have been aggressors at different points in time. At least one reasonable interpretation is that two separate acts of physical violence were committed. Therefore, the criminal responsibility of each defendant must be decided separately, based on the facts presented to the respective jury. Handy's conviction by itself would not assist the Joynes' jury in its deliberations. Therefore, Joynes' reliance on the above statute is misplaced.

---

**3.** In *Gray*, this Court interpreted the former Md.Code (1957), Art. 35 § 11, which has been rewritten as Md.Code (1974, 1984 Repl.Vol.), Courts and Judicial Proceedings Article, § 10–904.

■ Second, Joynes argues that § 10–905 is supportive of its central position that the trial judge should have admitted Handy's prior conviction. Section 10–905 provides, in pertinent part:

§ 10–905. Proof of interest or conviction of infamous crime.

(a) *In general.*—Evidence is admissible to prove the interest of a witness in any proceeding, or the fact of his conviction of an infamous crime. Evidence of conviction is not admissible if an appeal is pending, or the time for an appeal has not expired, or the conviction has been reversed, and there has been no retrial or reconviction.

Recently, we addressed the scope of § 10–905, specifically as it relates to the introduction of prior convictions for impeachment purposes. *See Prout v. State,* 311 Md. 348, 535 A.2d 445 (1988); *see also Watson v. State,* 311 Md. 370, 535 A.2d 455 (1988); *Wicks v. State,* 311 Md. 376, 535 A.2d 459 (1988).

■ We find no merit in this argument for two reasons. First, the fact of the witness's prior conviction was not offered for the purpose of impeachment. Here, Joynes' counsel specifically stated that he did not intend to introduce Handy's battery conviction for impeachment purposes. Consistent with *Prout, Watson* and *Wicks,* the application of § 10–905 is limited to the admission of convictions for impeachment purposes. Second, even had the battery conviction been offered for that purpose, it would clearly have been inadmissible. In *State v. Duckett,* 306 Md. 503, 510 A.2d 253 (1986), we held that there is no basis for the trial judge to determine whether a battery conviction impacts upon the witness's credibility. The fact of a battery conviction adds nothing concerning the probable veracity of a witness. *Id.* 306 Md. at 512, 510 A.2d at 258; *see also Gordon v. United States,* 127 U.S.App.D.C. 343, 347, 383 F.2d 936, 940 (1967), *cert. denied* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968).

Joynes also cites several cases supporting the notion that a prior conviction may be admitted as substantive evidence to establish material facts contrary to a witness's testimony. *See Zeller v. Mayson*, 168 Md. 663, 179 A. 179 (1935); *Green v. State*, 161 Md. 75, 155 A. 164 (1931); *Wilson Amusement Co. v. Spangler*, 143 Md. 98, 121 A. 851 (1923). We find the above authorities to be inapplicable. In essence, these authorities may be viewed as impeachment cases, and should not be interpreted as broadening the use of prior convictions.

In the context of the present case, we find no statutory basis for overturning the relevancy determination of the trial court. Furthermore, because we are convinced that Handy's battery conviction does not assist the jury in resolving the issue of self defense, or in determining the defendant's guilt in the subsequent trial, the witness's battery conviction arising out of a series of events was inadmissible.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY. COSTS TO BE PAID BY RESPONDENT.